**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

---

**ZACHARY HAYES,**

                Plaintiff,

v.                                      **Case No. 15-cv-1020-pp**

**WILLIAM POLLARD, et al.,**

                Defendants.

---

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED *IN FORMA PAUPERIS* (DKT. NO. 2) AND SCREENING PLAINTIFF'S COMPLAINT**

---

Zachary Hayes, a state prisoner, filed a *pro se* complaint under 42 U.S.C. §1983, alleging that his civil rights were violated while at Waupun Correctional Institution (WCI). Dkt. No. 1. The case is before the court on the plaintiff's motion for leave to proceed *in forma pauperis* (Dkt. No. 2) and for screening of the plaintiff's complaint.

**I. MOTION FOR LEAVE TO PROCEED *IN FORMA PAUPERIS***

The Prison Litigation Reform Act applies to this case because the plaintiff was incarcerated when he filed his complaint. 28 U.S.C. §1915. That law allows a court to give an incarcerated plaintiff the ability to proceed with his lawsuit without pre-paying the civil case-filing fee, as long as he meets certain conditions. One of those conditions is a requirement that the plaintiff pay an initial partial filing fee. 28 U.S.C. §1915(b). Once the plaintiff pays the initial

1

partial filing fee, the court may allow the plaintiff to pay the balance of the $350 filing fee over time through deductions from his prisoner account. Id.

On August 31, 2015, the court issued an order requiring the plaintiff to pay an initial partial filing fee of $6.04. Dkt. No. 6. The plaintiff paid that fee on September 18, 2015. Accordingly, the court will grant the plaintiff's motion for leave to proceed without pre-paying the filing fee and allows the plaintiff to pay the balance of the $350.00 filing fee over time from his prisoner account, as described at the end of this order.

## II. SCREENING OF THE PLAINTIFF'S COMPLAINT

### A. Standard for Screening Complaints

The law requires the court to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss part or all of a complaint if the plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

To state a claim under the federal notice pleading system, the plaintiff must provide a "short and plain statement of the claim showing that [he] is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). A plaintiff does not need to plead specific facts, and his statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41,

2

47 (1957)). A complaint, however, that offers "labels and conclusions" or "formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555). To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." Id. (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). The complaint allegations "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citation omitted).

In considering whether a complaint states a claim, courts follow the principles set forth in Twombly. First, the court must "identify[] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Iqbal, 556 U.S. at 679. A plaintiff must support legal conclusions with factual allegations. Id. Second, if there are well-pleaded factual allegations, courts must "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id.

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that the defendants: 1) deprived the plaintiff of a right secured by the Constitution or laws of the United States; and 2) acted under color of state law. Buchanan-Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009) (citing Kramer v. Village of North Fond du Lac, 384 F.3d 856, 861 (7th Cir. 2004)); see also Gomez v. Toledo, 446 U.S. 635, 640 (1980). The court is

3

obliged to give the plaintiff's *pro se* allegations, "however inartfully pleaded," a liberal construction. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

B.     Facts Alleged in the Complaint

On June 10, 2013, the plaintiff wrote the WCI unit manager to inform him that a non-party officer had grabbed his genitals during a pat search. Dkt. No. 1 at 2. On August 12, 2013, a non-party Prison Rape Elimination Act (PREA) investigator recorded his interview with the plaintiff about the alleged incident. Id.

On August 21, 2013, the plaintiff received a written report from defendant Tony Meli and the PREA investigator with the finding that, "The allegations has [sic] been determined to be un-founded, not that Mr. Hayes was lying on staff, because under D.O.C. Rules they cant [sic] speculate on one persons [sic] word against anothers." Id.[1]

On August 30, 2013, "the officer"—the plaintiff does not say which officer—served the plaintiff with a conduct report for lying about staff. Id. The plaintiff requested that his advocate call Meli as a witness and present the tape recorded interview with the PREA investigator as evidence at the conduct report hearing. Id.

---

[1] Throughout his complaint, the plaintiff refers to exhibits that he apparently intended to attach in support of his complaint; however, the court did not receive any exhibits with the filed complaint.

4

The plaintiff alleges that he informally spoke to the non-party officer, who said that no one from PREA had interviewed that non-party officer about allegations of sexual misconduct. Id.

On September 10, 2013, the conduct report hearing occurred. Id. Defendant Captain O'Donavan was the hearing officer, and Meli appeared as a witness. Id. Meli stated that the plaintiff's allegations were unfounded. Id. The plaintiff alleges that neither Meli nor O'Donavan listened to the tape recorded interview with the PREA investigator. Id. O'Donavan found the plaintiff guilty of lying about staff and disciplined the plaintiff with 300 days in segregation. Id.

The plaintiff appealed O'Donavan's finding, but defendant William Pollard affirmed the decision. Id. The plaintiff filed an inmate complaint regarding the conduct report and resulting decision. Id. The corrections complaint examiner and the Office of the Secretary acknowledged having received the inmate complaint. Id.

Although the plaintiff's complaint is a little confusing with regard to what happened next, it appears that he is asserting that on January 5, 2013, the DOC Office of Legal Counsel and the DOC Chief of Special Investigations expunged the plaintiff's record of the lying charge because Meli both wrote the conduct report and denied the plaintiff's evidence at the hearing and because the evidence did not support the charge of lying about staff. Id. at 2-3.

The plaintiff alleges he was transferred to the Wisconsin Secure Program Facility (WSPF) and received 300 days in segregation because he complained about staff. Id. at 3. The plaintiff does not state when the transfer occurred.

5

Finally, he states that "[u]pon information and belief, Capt. Vander Werff signed off on the ticket to proceed and could have dismissed the ticket before on his own admission." Id.

C. Legal Analysis of Alleged Facts

The plaintiff's first claim is that the defendants violated his First Amendment right to free speech. Id. at 3. The court construes this argument as a retaliation claim—the plaintiff argues that the defendants took the various actions that they did in order to retaliate against him for reporting the fact that a corrections officer grabbed his genitals.

To state a retaliation claim, the plaintiff must allege that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the [d]efendants' decision to take the retaliatory action." Bridges v. Gilbert, 557 F.3d 541, 546 (7th Cir. 2009) (internal quotations omitted). The plaintiff alleges he engaged in an activity protected by the First Amendment—he complained about being sexually assaulted by a corrections officer. He also alleges that he suffered deprivations that likely would deter his making similar reports in the future—he was written up in a conduct report that resulted in his being sentenced to 300 days in segregation, and possibly resulted in his being transferred from Waupun to WSPF. Finally, he argues that he believes that the named defendants were motivated by his complaint to take these retaliatory actions—that defendant Meli wrote the conduct report, that defendant O'Donavan

6

decided against him in connection with the conduct report, that defendant Vander Werff "signed off on the ticket to proceed," and that defendant Pollard upheld defendant O'Donavan's decision, because he complained about the sexual assault.

The court finds that, at least as to the writing of the complaint, the decision on the complaint, and the decisions on appeal of the complaint, the plaintiff has alleged sufficient facts to proceed on his retaliation claim against the four named defendants. The plaintiff's allegations do not support the claim that any of these defendants were responsible for him being transferred to WSPF, but they do support an allegation that these defendants charged and convicted him of misconduct in retaliation. The court will allow the plaintiff to proceed on his First Amendment retaliation claim.

The plaintiff's second cause of action alleges that the defendants violated his Fourteenth Amendment right to equal protection, "(class of one)." Id. at 3. To state a "class of one" equal protection claim, a plaintiff must allege that government officials treated another similarly situated person more favorably than him and that there was no rational basis for the difference in treatment. Enquist v. Oregon Dept. of Agriculture, 553 U.S. 591, 601-02 (2008); Thayer v. Chiczewski, 705 F.3d 237m, 255-56 (7th Cir. 2012). The only statements in the plaintiff's complaint that seem to relate to this claim are the following: "Upon information and belief other inmates at Waupun Corr. Inst. are not treated like this and have not received conduct reports for telling staff they were sexual assaulted." Dkt. No. 1 at 3. This vague allegation that "other inmates at [WCI]

7

are not treated like this and have not received conduct reports for telling staff they were sexual [sic] assaulted" is not sufficient to state a "class of one" claim. The plaintiff has not identified another inmate similarly situated to himself who was treated more favorably than he was. In other words, he has not identified another Waupun inmate who reported a sexual assault, but was not subjected to a conduct report. Accordingly, the court will not allow the plaintiff to proceed on his equal protection claim.

The plaintiff's third cause of action alleges that the defendants violated his Fourteenth Amendment right to due process. "[I]n the prison disciplinary context, due process requires only that the prisoner receive advance written notice of the charges, an opportunity to present testimony and documentary evidence to an impartial decision-maker, and a written explanation for the discipline, that is supported by 'some evidence' in the record." Piggie v. Cotton, 342 F.3d 660, 662 (7th Cir. 2003). To be entitled to the due process protections discussed above, a plaintiff must first show that he has a protected liberty interest. Domka v. Portage Cnty., 523 F.3d 776, 779-80 (7th Cir. 2008) citing Minch v. City of Chicago, 486 F.3d 294, 302 (7th Cir. 2007). A liberty interest exists when prison officials restrain an inmate in a way that "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Connor, 515 U.S. 472, 484 (1995).

The plaintiff alleges that O'Donavan disciplined him with a sentence of 300 days in segregation, and it appears he served less than that—approximately four months, or 120 days—because O'Donavan's decision was

8

overturned. The Seventh Circuit has noted that "an inmate's liberty interest in avoiding segregation is limited." Hardaway v. Meyerhoff, 734 F.3d 740, 743 (7th Cir. 2013), quoting Marion v. Columbia Corr. Inst., 559 F.3d 693, 697 (7th Cir. 2009). In considering whether a particular term of segregation creates a due process violation, courts must look at whether the segregation "imposed an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" Id., quoting Sandin v. Conner, 515 U.S. 472, 474 (1995). The Seventh Circuit has held that "[a]lthough relatively short terms of segregation rarely give rise to a prisoner's liberty interest, at least in the absence of exceptionally harsh conditions, such an interest *may* arise from a long term of confinement combined with atypical and significant hardships." Id. (citations omitted).

     The Seventh Circuit has found in two different cases that segregation terms of six months (180 days) and six months and one day (181) are not, standing alone, sufficient to create a liberty interest. See Marion v. Columbia Corr. Inst., 599 F.3d at 698; Hardaway v. Meyerhoff, 734 F.3d at 744. If the court is correct that the plaintiff served only about four months, then under Seventh Circuit law, the length of confinement alone is not sufficient to give rise to a liberty interest. And, unlike the plaintiff in Hardaway, the plaintiff in this case has not alleged that his time in segregation involved any "atypical and significant hardship," such as "deprivation of virtually all sensory stimuli or human contact for an indefinite period of time." Hardaway, 734 F.3d at 744, quoting Wilkinson v. Austin, 545 U.S. 209, 214-15 (2005).

9

Case 2:15-cv-01020-WED    Filed 01/07/16    Page 9 of 12    Document 8

Accordingly, the plaintiff has not alleged sufficient facts to allow him to proceed on a Fourteenth Amendment due process claim.

### III. CONCLUSION

The court **GRANTS** the plaintiff's motion for leave to proceed *in forma pauperis*. Dkt. No. 2.

The court **ALLOWS** the plaintiff to proceed on his First Amendment retaliation claim against all four named defendants.

The court **ORDERS** that the Secretary of the Wisconsin Department of Corrections or his designee shall collect from the plaintiff's prison trust account the $343.96 balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the clerk of the court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The Secretary of the Wisconsin Department of Corrections or his designee shall clearly identify the payments by the case name and number assigned to this action.

The court further **ORDERS** that pursuant to an informal service agreement between the Wisconsin Department of Justice and this court, copies of the plaintiff's complaint and this order are being electronically sent today to the Wisconsin Department of Justice for service on the state defendants.

The court further **ORDERS** that, pursuant to the informal service agreement between the Wisconsin Department of Justice and this court, the

defendants shall file a responsive pleading to the complaint within **sixty (60)** days of receiving electronic notice of this order.

The court further **ORDERS** that, pursuant to the Prisoner E-Filing Program, the plaintiff shall submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. The Prisoner E-Filing Program is in effect at Dodge Correctional Institution, Green Bay Correctional Institution, Waupun Correctional Institution, and Wisconsin Secure Program Facility and, therefore, if the plaintiff is no longer incarcerated at one of those institutions, he must submit all correspondence and legal material to:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

**The plaintiff should not send copies of pleadings to the court's chambers.** Doing so will only slow proceedings. Because the clerk's office will electronically docket every pleading in the case, the plaintiff does not need to mail copies of his pleadings to the defendants. The court further advises the plaintiff that if he fails to timely file documents, this may result in the dismissal of his case for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

The court will send a copy of this order to the warden of the facility where the plaintiff is incarcerated.

Dated in Milwaukee, Wisconsin this 7th day of January, 2016.

BY THE COURT:

HON. PAMELA PEPPER
United States District Judge